Arturo Lucio PARRA, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–95–00054–CR.

Court of Appeals of Texas,
Texarkana.

Oct. 25, 1996.

863

Robert Udashen, Dallas, for appellant.

Sue Korioth, Assistant District Attorney, Kevin P. Yeary, Assistant District Attorney, Dallas, for appellee.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

GRANT, Justice.

Arturo Parra was tried and convicted by a jury for the offense of capital murder. The State did not seek the death penalty, and the jury assessed punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice.

Parra contends that

(1) The evidence was legally insufficient to support the verdict.

(2) The evidence was factually insufficient to support the verdict.

(3) The trial court erred in overruling his objection to the court's explanation of the grand jury process as a filtering mechanism that washes out the weak cases.

(4) The trial court erred in overruling his objection to the State's strike of a Hispanic member of the jury panel.

(5) The trial court erred in overruling his request that he be allowed to make an opening statement to the jury immediately after the State's opening statement.

(6) The trial court erred in overruling his objection to the court's insertion of the culpable mental state of "knowingly" into the court's charge.

(7) The trial court erred in not requiring the court reporter to make a full record of the rulings and remarks of the court on all of

his objections to the admissibility of the evidence.

(8) The trial court erred in permitting the State's witness Lajerlanda King to invoke his privilege against compelled self-incrimination on cross-examination.

Evidence was introduced to show the following: On July 1, 1993, Arturo Parra, Johnny Rojo (Arturo's cousin), and Michael Parra (Arturo's brother) were riding around Dallas in Rojo's car, looking for drugs. At one point, Rojo stopped the car, and Michael Parra got out and approached a person named Lajerlanda King and asked King to sell him some drugs. When Michael Parra would not show him any money, King walked away and Michael got back into Rojo's car. Then Marcus Dismuke, the victim/decedent, approached the car and offered to sell the occupants some drugs. He got into Rojo's car and showed them three $20 rocks of cocaine. Dismuke then directed them to drive into a nearby alley. Rojo stopped the car. Arturo got out of the car with a handgun and ordered Dismuke to get out also.

Arturo pointed a handgun at Dismuke and told him to empty his pockets. In doing so, Dismuke dropped one of the cocaine rocks that he previously had shown to those in the car. While Dismuke looked for the rock of cocaine on his hands and knees, Arturo hit him on the head with the handgun and then shot him once in the head at close range. Arturo jumped back into the car, and Rojo drove away quickly. Only a short distance away, however, Rojo drove through a puddle of water, causing his engine to stall. When Arturo and Michael saw an officer approaching, they got out of the car and ran away. Rojo stayed with his car and was arrested when the officer arrived at the scene. Arturo and Michael were taken into custody later.

■ We first must determine whether the evidence was legally and factually sufficient to support the jury's verdict that Arturo Parra committed the offense of capital murder. In determining whether the evidence was legally sufficient, a court of appeals must view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Stone v. State*, 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). In reviewing factual sufficiency, a court of appeals must view all the evidence, not in the light most favorable to the prosecution. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). A court of appeals will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

■ The elements of the offense of capital murder are that

a. a person

b. committed murder as defined in section 19.02(b)(1), and

c. intentionally committed the murder in the course of committing or attempting to commit robbery.

*See* TEX.PENAL CODE ANN. § 19.03(a)(2) (Vernon 1994).

Penal Code section 19.02(b)(1) provides that a person commits the offense of murder if he *intentionally or knowingly* causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(b)(1) (Vernon 1994).

■ Rojo testified that Parra took a gun from beneath the car seat, got out of the car, and ordered Dismuke to get out also. Parra then ordered Dismuke to turn over drugs which he believed Dismuke had on his person. While emptying his pockets, Dismuke dropped a rock of cocaine on the ground. Parra told him to find it and pick it up.

Rojo further testified that Dismuke got down on his knees, looking for the rock of cocaine he had dropped; that Parra cursed him and ordered him to hurry; that Dismuke pleaded with Parra not to shoot him; that he (Rojo) told Parra to leave Dismuke alone and not to shoot him; that Parra then hit Dismuke on his head with the gun and shot him in the head; and that Parra then told him (Rojo) that they had to get away from the scene and that if Rojo "narked on him," he would kill him.

■ Because Rojo was an accomplice witness, his testimony had to be corroborated

by other evidence tending to connect Parra with the offense committed. TEX.CODE CRIM. PROC.ANN. art. 38.14 (Vernon 1979). Corroboration is insufficient if it merely shows commission of the offense. *Id.*

■ In this case, Officer Kevin Scahill testified that Parra telephoned him at 3:00 a.m. the morning after Dismuke was shot. The caller identified himself as Arturo Parra and said that he had accidentally shot Dismuke. Scahill arranged for Parra to meet him at a police station at 7:00 a.m. that same morning. Parra did so. Scahill's testimony tended to connect Parra to the shooting death of Dismuke, and therefore was sufficient to corroborate Rojo's accomplice testimony, as Article 38.14 requires.

Parra argues that the State's evidence established only that Parra intended to rob Dismuke, that in the course of the robbery, Parra accidentally shot and killed Dismuke, that the only rational interpretation of the State's evidence is that Parra pointed a gun at Dismuke to threaten or scare him into submitting to a robbery, and that the gun accidentally went off. He further contends that this case should be for felony murder rather than capital murder and cites *Livingston v. State,* 739 S.W.2d 311, 336 (Tex.Crim. App.1987) (capital murder requires an intent to kill; felony murder requires only the intent to commit the underlying felony, which in the instant case was robbery). The State points out, however, that intent can be inferred from a capital murder defendant's actions or conduct, citing *Robertson v. State,* 871 S.W.2d 701 (Tex.Crim.App.1993), and that specific intent to kill may be inferred from the use of a deadly weapon, citing *Garcia v. State,* 887 S.W.2d 862 (Tex.Crim.App. 1994).

■ A firearm is a deadly weapon per se, TEX.PENAL CODE ANN. § 1.07(a)(17)(A) (Vernon 1994), as is, in particular, a pistol. *Ex parte Franklin,* 757 S.W.2d 778, 782 (Tex. Crim.App.1988). We conclude that the jury could have inferred that Parra, who concedes that he pointed a pistol at Dismuke's head and then shot him, did so intentionally.

In his brief, Parra concedes that the State's evidence established that he intended to rob Dismuke. Accordingly, proof of that element of the offense is not an issue in this appeal. The witnesses' credibility and the weight to give their testimony, however, were within the jury's province. The jury may accept or reject all or any part of a witness's testimony. *Williams v. State,* 784 S.W.2d 428, 430 (Tex.Crim.App.1990).

■ Parra contends that a discrepancy in the testimony exists regarding the manner in which Parra shot the decedent. Rojo testified that Parra held the gun up against Dismuke's head when he shot him. Dr. Sheila Spotswood, a Dallas County medical examiner, testified that Dismuke's death was caused by a gunshot wound to the head, fired from a distance of more than two or three feet from Dismuke. Neither version of the evidence contradicts that Parra shot Dismuke. As to whether the inconsistency undermines the evidence to the extent that its credibility was destroyed was a question for the jury. The jury found it did not.

Viewing the evidence in the light most favorable to the prosecution, we determine that any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. We conclude, therefore, that the evidence was legally sufficient. Viewing all the evidence not in the light most favorable to the prosecution, we conclude that the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We conclude, therefore, that the evidence was factually sufficient to support the verdict of guilt in this case.

Next, Parra contends that the trial court erred in telling the jury panel that the grand jury process was a filtering mechanism that washes out the weak cases. At trial, the trial judge chose to explain to the jury panel how a grand jury is empaneled and how it returns an indictment. Parra specifically objects to the following remarks which were included in the judge's explanation to the jury panel:

They are kind of a filtering mechanism. They wash out routinely about 20 to 25 percent of the cases that come before them. It saves us a lot of work here in the courts because they are washing out the

weak cases, those that are doubtful or are a liability or where the proof is not available, and it saves us a lot of time. It saves you, the taxpayers, a lot of money because you don't need as many courts and prosecutors.

Parra objected to the court's comments on the ground that the court had informed the jury panel that the grand jury had already found the facts against him, thereby shifting the burden of proof and violating Parra's constitutional rights. Parra contends that the court's remarks implied that an indictment was some evidence of guilt, because the facts of the defendant's case had been sifted and sorted by the grand jury. He moved for discharge of the jury panel. Both the objection and the motion were overruled.

Parra then asked the court, alternatively, to correct its instructions so that the jury panel would not misconstrue them and to inform the panel that a grand jury indictment means nothing more than that a person has been indicted and that the indictment is not evidence. The judge then informed the panel, in relevant part, that the matters heard by the grand jury were quite brief and that a jury should not read any significance whatsoever into the fact that a grand jury had returned an indictment. He further informed them that a grand jury did not determine guilt or innocence; rather, the grand jury determines only if there is sufficient evidence to send the case to trial for a determination of guilt or innocence and that he would so charge the jury selected that it was not to consider the fact that an indictment had been returned. The court reiterated that the grand jury serves as a filtering device. No further objection was made after the judge amplified his prior explanation to the jury panel.

The trial court's discussion of the grand jury as a filtering mechanism that washed out about twenty to twenty-five percent of the cases that come before it was unnecessary and improper. It placed an unnecessary emphasis on the action of the grand jury, which tends to undermined the instruction to the petit jury that it is not to regard the action of the grand jury as a factor in the guilt or innocence of the defendant. In light

of the context in which it is given and the added instruction by the court informing the jury panel orally and in the written charge that the indictment was not evidence and that no significance should be read into the fact that the grand jury has returned an indictment, we find beyond a reasonable doubt that the statements did not violate Parra's right to a fair trial. Furthermore, the failure to object to the trial court's reiteration by the trial court that the grand jury served as a filtering device constituted a waiver to that specific language. This point of error is overruled.

Next, Parra contends that the court erred in overruling his *Batson* objection to the State's peremptory strike of jury panelist number 35, a Hispanic panelist. To determine whether there has been discrimination in jury selection, we must examine the entire record of trial and determine whether the court's action was clearly erroneous, i.e., whether there was no support for the decision. *Whitsey v. State*, 796 S.W.2d 707, 716 (Tex.Crim.App.1989). If there was support, the court's decision was not clearly erroneous. *Vargas v. State*, 838 S.W.2d 552, 554 (Tex.Crim.App.1992). We will review the evidence in the light most favorable to the court's ruling. *Id.* at 553. To determine whether the State's explanation for the questioned strike constituted a neutral reason, a court of appeals reviews the voir dire, explanation, racial make-up of the jury panel, and defendant's evidence presented in rebuttal and for impeachment. *Id.* at 554. If the trial court's account of the evidence is plausible in light of the entire record, the appellate court must accept that account. *Green v. State*, 880 S.W.2d 198 (Tex.App.—Texarkana 1994, no pet.). The appellate court must give great deference to the trial court's determination. *Id., citing Alexander v. State*, 866 S.W.2d 1, 8 (Tex.Crim.App.1993).

 Under *Batson* and case law applying it, neither the State nor the defendant in a criminal proceeding may exercise peremptory challenges in a purposefully discriminatory manner. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Esteves v. State*, 849 S.W.2d 822 (Tex.Crim. App.1993). The United States Supreme

Court and Texas Court of Criminal Appeals have set forth the procedure for evaluating an objection to a peremptory challenge of a jury panelist to determine whether the trial judge's decision was clearly erroneous. First, the defendant must establish prima facie that the prosecutor's challenge of a jury panelist was based on gender or race. *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (gender); *Batson,* 476 U.S. 79, 106 S.Ct. 1712 (race).

The burden to go forward then shifts to the prosecutor to provide a race- and gender-neutral explanation for striking the jury panelist in question. *Keeton v. State,* 724 S.W.2d 58, 65 (Tex.Crim.App.1987). The explanation need not be persuasive but must be clear, reasonably specific, and based on something other than the race or gender of the jury panelist.

After the jury list was struck, by objecting that jury panelists 4, 6, 35, and 54 were struck for racial reasons, Parra established a prima facie case under *Batson.* The burden to go forward then shifted to the prosecutor to show that the strike in question was racially neutral. The prosecutor responded [1] that he struck Martinez because she has a brother and sister-in-law who recently have been in and out of jail and are currently awaiting trials on criminal charges. The prosecutor further stated that when panelists have relatives or close friends with cases pending, there is too much uncertainty and unknown which makes him believe the panelists will not be good jurors for the State; therefore, he consistently strikes them. He also stated that he did not have enough strikes to strike every panelist who has a family member who has had problems in the criminal justice sys-

tem, but that, as was his practice, he did strike every panelist with a family member who had been to the penitentiary. He explained that he struck Martinez, panelist 35, because a case was currently pending against one of her family members.

Defense counsel responded that although Parra was Hispanic, there would be no Hispanics on the jury panel. Defense counsel declined to question the prosecutor on voir dire. No further objections were made that the reason given by the prosecution was pretextual or disparate. The trial court overruled the objection and found that the reason given by the prosecutor for striking Martinez from the jury panel was racially neutral. *See Cantu v. State,* 842 S.W.2d 667, 686 (Tex. Crim.App.1992); *Lee v. State,* 860 S.W.2d 582 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd) (striking a juror who has a friend or relative who has been arrested or convicted is racially neutral).

In his motion for new trial, Parra raises for the first time the issue of whether the treatment of prospective jurors King, who was not struck, and Martinez was disparate because King allegedly was placed on deferred adjudication once for writing bad checks.[2] Parra contends that this makes it clear that the prosecutor's claim that Martinez was struck because her family members had cases pending against them was a sham. Parra did not bring out this information during either voir dire or the *Batson* hearing.

The State counters that its striking potential juror Martinez and not King was not disparate treatment, citing *Cantu v. State,* 842 S.W.2d at 686 (disparate treatment can-

---

**1.** The prosecutor's response was not sworn. The question of "evidence" versus a "statement to the court" has been recently discussed in *Lott v. City of Fort Worth,* 840 S.W.2d 146, 150–51 (Tex. App.—Fort Worth 1992, no writ). After the trial court required the defendant to come forward with reasons for peremptory challenges, the court noted that the attorney was not under oath, but stated his reasons on the record. The Fort Worth court recognized that there is no statute or case requiring that the neutral explanation be given under oath, and that unsworn statements by counsel are not proper evidence. "However, if 'non-evidence' is 'introduced' and considered by the court without objection, it then becomes 'evidence'." *Id., citing Jones v. State,* 795 S.W.2d

32, 33–34 (Tex.App.—Houston [1st Dist.] 1990, no pet.); *Prosper v. State,* 788 S.W.2d 625, 626 n. 1 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). This principle would apply to a prosecutor's response the same as to a defense attorney's.

**2.** In his motion for new trial, Parra contended "the prosecutor's reason for striking Ms. Martinez was clearly pretextual because the prosecutor did not strike Linda King, juror number 11, even though Ms. King herself had been placed on deferred adjudication probation for some bad checks."

not be implied automatically in every situation in which one of the State's bases for striking a venireperson would technically apply to another venireperson whom the State found acceptable). At the hearing on Parra's motion, the court stated that no information about alleged disparate treatment as to panelist King was made known to him at the trial before he made his *Batson* ruling.[3] The trial court overruled the motion for new trial.

The third step in the analysis of whether a juror strike is racially neutral is to determine whether the applicant carried his burden to prove to the trial court that purposeful discrimination was exercised against a particular jury panelist. The trial judge found that the reason given by the prosecutor was racially neutral and that the strike was not motivated by a desire to eliminate a particular racial group from service on the jury. The judge also stated that he believed the jury to be fairly constituted.

 To preserve an issue for appeal, there must have been a timely objection specifically stating the legal basis for the objection. TEX.R.APP.P. 52(a); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). "[A] state court may adopt a general rule that" to be timely, a *Batson* claim must be raised before appeal or before the jury is sworn. *Ford v. Georgia*, 498 U.S. 411, 423, 111 S.Ct. 850, 857, 112 L.Ed.2d 935, 949 (1991). Texas has adopted the rule that a *Batson* objection is timely if the defendant makes the motion before the jury is sworn and the remainder of the venire is dismissed. *Henry v. State*, 729 S.W.2d 732, 736–37 (Tex.Crim.App.1987). Before the jury was sworn, Parra raised a timely *Batson* objection, but he did not raise the specific ground of disparate treatment until he filed his motion for new trial.

Parra urges that it is proper to point out the disparate treatment on appeal even if the disparate treatment was not specifically brought to the trial judge's attention, citing *Vargas v. State*, 838 S.W.2d 552, 556 and *Young v. State*, 826 S.W.2d 141, 144–46 (Tex. Crim.App.1991). In *Vargas*, the court stated

that a defendant may rely on a comparative analysis of venirepersons on appeal and is not "required to request that the trial judge make his finding upon a comparison analysis nor is he obliged to offer in evidence testimony from jury selection supporting such an analysis." *Vargas*, 838 S.W.2d at 556. In both *Vargas* and *Young*, however, the Court of Criminal Appeals emphasized that in evaluating a *Batson* claim, an appellate court may not consider comparison evidence not "presented to the trial court, either at the voir dire or at the subsequent *Batson* hearing." *Vargas*, 838 S.W.2d at 556; *Young*, 826 S.W.2d at 145.

In *Vargas*, the defendant tried to rely on juror information cards, and the Court of Criminal Appeals determined that, in that case, the cards were not presented to the trial court at voir dire or the *Batson* hearing. Similarly, in the present case, Parra relies on juror information cards in making his pretext argument. The information relied on, concerning King's prior brush with the law, was not presented to the trial court either at the voir dire or at a subsequent *Batson* hearing. Under *Vargas*, to get the evidence on which he now relies into the record, he should have introduced it at the *Batson* hearing.

A disparate treatment ground for a *Batson* objection "is an argument of the evidence presented to the trial judge during the voir dire and the *Batson* hearing." *Young*, 826 S.W.2d at 145. "It is defense counsel's opportunity to rehash the voir dire, argue any perceived discrepancies in the voir dire and impeaching evidence brought out during cross-examination of the prosecutor, and show that the prosecutor's race neutral explanations for his peremptory strikes are not in fact race neutral." *Id.* at 145–46. An appellant can "argue what is in evidence from the voir dire and the *Batson* hearing and why he should prevail on his *Batson* claim." *Id.* at 146.

In asserting this new ground for a *Batson* motion, Parra is asking us to consider evidence which he failed to present to the trial

---

**3.** In his motion for rehearing, Parra admits that at trial "[t]he prosecutor never asserted any reason at all for failing to strike King." If Parra had objected to the striking of King, then the

prosecutor could have offered his reason, and the trial court could have considered that ground before ruling on Parra's *Batson* objection.

court in either voir dire or a *Batson* hearing. We cannot consider evidence that was not presented to the trial court at either the voir dire or a *Batson* hearing; therefore, we find no evidence to support Parra's asserted ground of disparate treatment. We conclude that the court's finding of racial neutrality in the striking of jury panelist number 35, Martinez, was not clearly erroneous and that the finding is supported by the record. We also conclude that Parra did not carry his burden to show that purposeful discrimination was exercised against the jury panelist in question. We further find that Parra did not properly present any evidence concerning King's background. This point of error is overruled.

Next, Parra contends that the trial court erred in overruling his request that he be allowed to make an opening statement to the jury immediately following the State's opening statement. The Texas Code of Criminal Procedure sets forth the order of proceeding in a criminal trial:

**Art. 36.01. Order of proceeding in trial**

(a) A jury being empaneled in any criminal action, ... the cause shall proceed in the following order:

(1) The indictment ... shall be read to the jury by the attorney prosecuting....

(2) The special pleas, if any, shall be read by the defendant's counsel, and if the plea of not guilty is also relied upon, it shall also be stated.

(3) The State's attorney *shall* state to the jury the nature of the accusation and the facts which are expected to be proved by the State in support thereof.

(4) The testimony on the part of the State shall be offered.

(5) The nature of the defenses relied upon and the facts expected to be proved in their support shall be stated by defendant's counsel.

(6) The testimony on the part of the defendant shall be offered.

(7) Rebutting testimony may be offered on the part of each party.

....

(b) *The defendant's counsel may make the opening statement for the defendant immediately after the attorney representing the State makes the opening statement for the State.* After the defendant's attorney concludes the defendant's opening statement, the State's testimony shall be offered. At the conclusion of the presentation of the State's testimony, the defendant's testimony shall be offered, and the order of proceedings shall continue in the manner described by Subsection (a) of this article.

TEX.CODE CRIM.PROC.ANN. art. 36.01 (Vernon Supp.1996) (emphasis added).

The State counters that the prosecutor did not make an opening statement and that, in that circumstance, the defendant may not make an opening statement prior to the presentation of the State's case, and cites *Moore v. State*, 868 S.W.2d 787 (Tex.Crim.App. 1993). In that case, the court held that Article 36.01(b) is inapplicable in cases in which the State waives opening argument, and that in such cases, the defendant may make an opening statement upon the close of the State's case in chief pursuant to Article 36.01(a). *Id.* at 790–91. The court further stated that where the State does proffer an opening statement, the defendant may demand oral statement immediately after either the State's opening statement or the presentation of the State's case in chief. *Id.* at 791; *see also Boston v. State*, 871 S.W.2d 752 (Tex.Crim.App.1994) (citing *Moore*, reiterating that Article 36.01 allows a defendant to make an opening statement prior to presentation of the State's case only when the State first makes one).

 In the instant case, after the jury was sworn, the trial court asked the prosecutor to arraign the defendant. Thereafter, the prosecutor proceeded as follows:

Good morning, ladies and gentlemen. The trial begins by the law requiring me to read to you the Indictment in this case. And I think, if you recall, as the Judge said the other day, the Indictment basically serves two purposes. Number one, it tells the Defendant and his attorney the charges that are pending against him and also contains the elements that we the

State must prove to the Jury in this case. It reads as follows: [reads indictment]

When the indictment had been read, Parra entered a plea of not guilty. Thereafter, Parra's counsel approached the bench and an unrecorded discussion was had out of the jury's hearing.[4] The trial court stated on the record that defense counsel had made a motion to be allowed to make an opening statement even though the State had not made any opening remarks to the jury. Defense counsel made no objection to this characterization of his unrecorded oral motion to the court at the bench. The court overruled the motion.

On appeal, Parra argues that the prosecutor's prefatory remarks regarding the indictment constituted an opening statement to which he was entitled to respond and that it was error for the judge to have denied him that response. According to the trial judge's statement on the record, Parra's counsel at trial asked for permission to make an opening statement even though the State had not made any opening remarks to the jury. He was not entitled to make an opening statement at that point in the proceedings unless the State made an opening statement. *See* TEX.CODE CRIM.PROC.ANN. art. 36.01(b). This did not preclude the defense attorney from making an opening statement after the State presented its testimony as provided in TEX. CODE CRIM.PROC.ANN. art. 36.01(a)(5).

Parra insists that the mere reading of the indictment by the prosecutor constituted an opening statement. He offers no authority for this argument, and we are aware of none. The reading of the indictment is required by Article 36.01(a)(1). If this were meant to constitute an opening statement, there would be no need for the Article 36.01(a)(3) provision that the State's attorney, after reading the indictment, should state to the jury the nature of the accusation and the facts which are expected to be proved by the State in support thereof.

█ The term "opening statement of counsel" is defined in Black's Law Dictionary

as an outline or summary, at the start of the trial, before any evidence is submitted, of the nature of the case and of the anticipated proof to be presented to the jury by counsel. BLACK'S LAW DICTIONARY 1091 (6th ed. 1990). The purpose of an opening statement is to advise the jury of facts relied on and of issues involved, and to give the jury a general picture of the facts and the situations so that the jury will be able to understand the evidence. *Id.* The opening statement in a criminal case is an outline of facts which the prosecution in good faith expects to prove. *Id.* We conclude that the brief remarks made by the prosecutor prior to reading the indictment did not constitute an opening statement.

Under these circumstances, Parra's counsel was not entitled to make an opening statement prior to the State's presentation of evidence, and the trial court's failure to allow an opening statement at that time was not error.

This point of error is overruled.

█ Next, Parra contends that the court erred in overruling his objection to the court's insertion of the culpable mental state of "knowingly" into that portion of the court's charge that applied the law of capital murder to the facts.

The second and third paragraphs of the jury charge read to the jury included the following language:

Our law provides that a person commits murder when he *intentionally or knowingly* causes the death of an individual. A person also commits murder if he commits or attempts to commit a felony, . . . and in the course of and in furtherance of the commission or attempt, . . . he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

A person commits capital murder when such person intentionally commits the murder in the course of committing, or attempting to commit, the offense of robbery.

---

4. Defense counsel urges that the failure of the court reporter to record the bench conference should not constitute a failure to preserve those issues for appeal; however, we do not base our decision on a failure to preserve the objection.

(Emphasis added.) No objection to this language was raised. However, the application paragraph of the charge, as printed, omitted the words "or knowingly," as above emphasized. The trial court, while reading the charge to the jury, stated on the record that he believed that the application paragraph of the charge should contain the words "or knowingly," and that he was going to add that language to the charge. The judge interlineated the charge in the application paragraph by inserting the words "knowingly or" and read it to the jury as follows:

Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of July, 1993, in Dallas County, Texas, the defendant, Arturo Lucio Parra, did then and there, *knowingly or* intentionally cause the death of Marcus Dismuke, an individual, by shooting him with a firearm, and that the defendant, Arturo Lucio Parra, did intentionally cause the death of Marcus Dismuke while he, Arturo Lucio Parra, was in the course of committing or attempting to commit the offense of robbery of Marcus Dismuke, as charged in the indictment, then you will find the defendant guilty of Capital Murder....

(Emphasis added.)

Parra contends that the insertion of "knowingly" into the charge allowed the jury to convict him on a culpable mental state less than that required by the capital murder statute, failed to guide the jury properly in its deliberations, and failed to prevent confusion of the jury.

As the Court of Criminal Appeals said in *Richardson v. State,* capital murder is committed when a person commits murder (Penal Code § 19.02(a)(1)) with at least one of the aggravating factors contained in the capital murder statute (Penal Code § 19.04). 744 S.W.2d 65, 83–84 (Tex.Crim.App.1987). In the *Richardson* case, the Court of Criminal Appeals approved such a charge, saying that it is a combining of the elements of the two statutes, the first requiring that murder be committed *and* the second requiring that it be committed intentionally in the course of

committing or attempting to commit a robbery.

In the present case, the charge tracks the statutory requirement using the basic form that the Court of Criminal Appeals approved in the *Richardson* case. This gives fair notice of the offense charged and does not permit the jury to convict upon a finding of a culpable mental state less than required by Tex.Penal Code Ann. § 19.03 (Vernon 1994). This point of error is overruled.

Next, Parra contends that the trial court erred in preventing the court reporter from making a full record of all objections to the admissibility of the evidence and the rulings and remarks of the court thereon. Specifically, Parra complains that the court reporter did not record all of the bench conferences during trial and that he is therefore unable to obtain a complete record from which to prepare his appeal.

On January 7, 1994, Para filed a detailed motion styled "Motion for the Court to Direct the Court Reporter to Record Proceedings." The request included all pretrial hearings, the entire voir dire examination, all opening statements by the State and by the defendant during the guilt/innocence phase, *along with all objections and rulings thereon,* testimony of all witnesses before and outside the presence of the jury, all communications between the court and the jury, all arguments made to the jury by counsel for both sides, *all objections made by counsel for both sides and the rulings thereon,* and all objections to the charge by both sides and the rulings thereon.

█ The motion of January 7, 1994 was pursuant to Rules 11(a)(1) and (2) of the Rules of Appellate Procedure that specify in relevant part that it is the duty of the court reporter to make a record of various court proceedings *when requested to do so by the judge or any party or attorney for any party in a case.* There is a duty under Rule 11(a)(1) that the court reporter make a full record of all objections to the admissibility of evidence and the rulings and remarks thereon when requested by the judge or any party to a case. But the mere filing of a motion with the clerk is not sufficient to call the matter to the attention of the judge or the

court reporter, even if the motion were construed to cover bench conferences. *See Allison v. State,* 618 S.W.2d 763, 764 (Tex.Crim. App. [Panel Op.] 1981); *Martinez v. State,* 565 S.W.2d 70, 72 (Tex.Crim.App. [Panel Op.] 1978); *American Plant Food Corp. v. State,* 508 S.W.2d 598 (Tex.Crim.App.1974) (requiring motions to be called to the court's attention).

▮ The present case, however, has an element missing in the other cases. During a pretrial conference on pending motions, the trial judge made the following statement:

Are there any other motions that need to be taken up at this time? There are some motions in limine.

The court reporter, of course, will be reporting all of the proceedings.

At that stage in the proceeding, the trial judge seemed to be going over all the motions, and it could be easily inferred that he was addressing Parra's motion to have the various proceedings recorded when he stated that the court reporter will be reporting all of the proceedings. Thus, his statement seemed to negate the need for Parra to further urge his motion because the ruling accomplished what he sought in his motion.

This case is also distinguishable from such cases as those in which the counsel for the defendant was aware that the court reporter was away from her desk or was not recording the proceeding. In the present case, the court reporter was present, and there was nothing to suggest the proceedings were not being recorded. The judge turned off the switch that would allow the bench conference to be recorded without the defense attorney being aware that he had switched it off. Therefore, counsel had no way of knowing that the conferences were not being recorded.

The language in Rule 50(e) specifically provides if the notes and records have been lost or destroyed without appellant's fault, the appellant is entitled to a new trial, unless the parties agree on a statement of facts. There is a series of cases under Rule 50(e) of the Rules of Appellate Procedure that, pursuant to that rule, hold that the failure to provide a complete statement of facts for the purpose of appeal is not subject to the harmless error rule. *See also Perez v. State,* 824 S.W.2d 565 (Tex.Crim.App.1992).

In the present case, no testimony is alleged to have been omitted; no notes or records have been lost; but the complaint deals with failure to record the bench conferences. There is a line of cases in Texas, not dealing with lost or destroyed records, but dealing with the failure of a court reporter to record certain proceedings. These cases indicate that the appellant has the burden of alleging that something pertinent took place in the unrecorded bench conferences to establish reversible error. *Phillips v. State,* 701 S.W.2d 875, 894 (Tex.Crim.App.1985); *Walthall v. State,* 594 S.W.2d 74 (Tex.Crim. App.1980); *Gruber v. State,* 812 S.W.2d 368, 372 (Tex.App.—Corpus Christi 1991, pet. ref'd); *Morales v. State,* 767 S.W.2d 207, 210 (Tex.App.—San Antonio 1989, pet. ref'd); *Aranda v. State,* 640 S.W.2d 766, 775 (Tex. App.—San Antonio 1982, no pet.). Following this line of cases, we find that Parra has not alleged anything that is pertinent to the points of error on this appeal that took place at the unrecorded bench conferences. Therefore, this point of error is overruled.

Lastly, Parra contends that the trial court erred in permitting State's witness Lajerlanda King to invoke his privilege against compelled self-incrimination on cross-examination on matters pertinent to his credibility and his relationship with Parra's brother, Michael Parra. He argues that the alleged error denied him his right of confrontation under Article I, Section 10 of the Texas Constitution and the Sixth Amendment to the United States Constitution. Parra also contends that the court erred in allowing the State to call King as a witness, knowing King would refuse to answer certain questions.

Lajerlanda King was called as a witness by the State. He testified that, on July 1, 1993, Michael Parra got out of a car in Dallas and asked him to sell him some drugs. Because Parra would not show him any money, King refused and walked away. King testified that he saw Marcus Dismuke approach the car and get into it. The car then drove away. King also testified that he was not involved in the drug transaction between

Parra and Dismuke, and he also denied that Dismuke was acting as his runner.

Parra contends that, on cross-examination of King, he sought to discredit the above testimony of King by demonstrating that King had prior drug dealings with Parra's brother, Michael. He complains that the court prevented him from doing this by permitting King to invoke his privilege against self-incrimination. On cross-examination, Parra asked King, in relevant part, whether on a previous occasion he had exchanged some marihuana for some crack cocaine with Michael Parra; whether he had ever sold cocaine to Michael Parra; and whether Michael Parra approached and asked him to sell him some drugs because King had sold drugs to him previously or had a previous relationship with him. On the advice of his counsel, King refused to answer each of these questions on the basis of his right to protect himself against self-incrimination under the Fifth Amendment to the United States Constitution.

Parra argues that when a witness takes the stand to testify during a trial he waives his privilege against compulsory self-incrimination with respect to the testimony he gives, citing *Bryan v. State*, 837 S.W.2d 637, 643 (Tex.Crim.App.1992). Again citing *Bryan*, he argues that when a witness voluntarily testifies, he is subject to the same rules of direct and cross-examination as any other witness. That case in inapposite, however, in that the court was clearly referring to the consequences to a defendant who takes the stand.

It is true that an accused in a criminal proceeding forfeits the privilege to a significant extent. But a witness, by simply testifying and putting his veracity in issue, does not waive his privilege with respect to his criminal acts relevant only to impeach his credibility. *Blackmon v. State*, 642 S.W.2d 499, 501 (Tex.Crim.App.1982) (citing C. McCormick, McCormick on Evidence, Sec. 140 (2d Ed.1972)).

■ In *Blackmon*, the court held that a witness who testifies against a defendant does not waive his privilege against self-incrimination with respect to extraneous activity. In that case, the appellant and three others were charged with having raped the prosecutrix. One of those three had been tried and convicted for that rape and was called by the State as a witness at the appellant's trial. The witness testified that both he and the appellant had raped the prosecutrix. On cross-examination, the witness admitted that he had been sentenced to life for that rape, and when asked if he had other cases pending against him, he replied to the effect that he knew of no other. *Blackmon*, 642 S.W.2d at 500. He was then asked if he had raped a person who had testified at his trial, as well as another woman. The witness refused to answer, invoking the Fifth Amendment privilege against self-incrimination. *Id.* Thereafter, the witness did testify, under court order, that no charges had been brought against him for the rape of either of the two women, that charges could still be brought against him for those two rapes. *Id.*

The transaction about which King testified was his encounter with Michael Parra on July 1, 1993 when Parra attempted to buy illicit drugs from him. That testimony included King's acknowledgement that he saw the decedent, Marcus Dismuke, approach Parra's car and get into it, after which the car drove away.

■ On cross-examination, the record shows that Parra's counsel exercised wide latitude in questioning King, except for approximately a half-dozen questions on which he asserted his Fifth Amendment privilege as to certain extraneous matters. Having related a part of the facts of the transaction or encounter with Michael Parra on July 1, 1993, King waived any privilege as to additional relevant facts *as to that encounter or transaction*. *Blackmon*, 642 S.W.2d at 501, citing *Draper v. State*, 596 S.W.2d 855 (Tex. Crim.App. [Panel Op.] 1980). King did not, however, waive his privilege against self-incrimination in general. *Id.*

The record shows that Parra's counsel asked a broad range of questions concerning the transaction in question that occurred on January 1, 1993. All of the many questions relative to the transaction and facts surrounding it were answered by King with no claim of privilege. King claimed a Fifth

Amendment privilege only as to five questions, all of which were to extraneous matters not related to the transaction itself.

 Parra argues that it was error for the State to call King as a witness, knowing that King would refuse to answer relevant and material questions. As authority, he cites *Horner v. State,* 508 S.W.2d 371, 372 (Tex.Crim.App.1974); *Allen v. State,* 461 S.W.2d 622, 625 (Tex.Crim.App.1970); and *Chambliss v. State,* 633 S.W.2d 678, 683 (Tex. App.—El Paso 1982), *aff'd,* 647 S.W.2d 257 (Tex.Crim.App.1983). The cases are also inapposite, in that each was a situation in which the party called a witness to the stand for the sole purpose of having the witness invoke his privilege or where the party knew that the witness would take that action. In the instant case, King did not invoke the Fifth Amendment as to any question asked him by the prosecutor. We conclude that the State did not call him for the sole purpose of invoking the privilege.

Parra also contends that his rights under Article I, Section 10 of the Texas Constitution and the Sixth Amendment to the United States Constitution were violated, but in his brief he has failed to distinguish between state and federal constitutional grounds on appeal. Accordingly, this claim of error is multifarious and presents nothing for review. *Thomas v. State,* 723 S.W.2d 696, 697 n. 2 (Tex.Crim.App.1986).

 We conclude that the trial court did not err in permitting witness Lajerlanda King to invoke his Fifth Amendment privilege as to five questions asked by defense counsel during cross-examination. This point of error is overruled.

The judgment of the trial court is affirmed.