WILSON V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-151-CR

IRA LEE WILSON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Appellant Ira Lee Wilson appeals from his conviction by a jury for the offense of murder.  In six issues, appellant argues that the trial court erred by (1) admitting a witness’s written statement under the rule of optional completeness, (2) prohibiting appellant from discussing  the law of self-defense during his opening statement, (3) prohibiting him from using exhibits on the law of self-defense during his opening statement, (4) failing to find sudden passion under section 19.02(d) of the penal code, (5) allowing testimony that appellant had been imprisoned for eight years, and (6) refusing appellant’s request that the jury be instructed to disregard testimony that appellant had been imprisoned for eight years.  We affirm.

II. Background Facts

On February 11, 2003, appellant shot and killed Robert Lewis after the two argued over who was the better rapper, 50 Cent or Ja Rule.  Appellant pled not guilty to the charge of murdering Lewis.  A jury found appellant guilty of murder, and the trial court assessed appellant’s punishment at forty years’ confinement. 

III. Written Statement

In his first issue, appellant argues that the trial court erred by admitting Teneshia Marable’s written statement under the rule of optional completeness.  Marable testified that she and her two-year-old son were at Clayton Mitchell’s apartment on the day of the shooting.  Marable testified that appellant was at the apartment when she arrived and that Lewis arrived later.  She testified that shortly after Lewis arrived at the apartment, he and appellant got into an argument.  Appellant, who was sitting down at the time, stood up, holding a gun.  Lewis began pushing appellant in the head.  Thinking the two men were going to fight, Marable went to the couch to protect her son.  Marable testified that as soon as she sat down on the couch she heard several gunshots and saw Lewis lying on the floor.  Marable picked up her son and ran out of the apartment.  Toward the end of the State’s direct examination of Marable, the following exchange occurred:

[STATE:] When you talked with the police, did you provide a written statement concerning what happened that night and what you saw?

[MARABLE:] Yes.

[STATE:] And did you give the police details of what you knew about this offense?

[MARABLE:] Yes. 

[STATE:] And is this what you are telling this jury today?

[MARABLE:] Yes.  

Appellant then cross-examined Marable about inconsistencies between her written statement and her trial testimony.  Appellant asked Marable whether she had told the police that she had fallen asleep at Mitchell’s apartment and had slept for about an hour, which Marable denied.  Appellant also asked Marable whether she had told police that she had arrived at Mitchell’s apartment at around 5:00 p.m. on the day Lewis was shot.  Again, Marable said she had not.  Appellant then read an excerpt from Marable’s written statement in which she stated that she arrived at Mitchell’s apartment around 5:00 p.m. and that she fell asleep while watching TV.  The following exchange then occurred:

[DEFENSE COUNSEL:]  Did you . . . tell them, “When I woke up Jimmy, and the boy that shot [Lewis], my baby and Clifford was walking down the stairs”སྭ

[MARABLE:] No.

[DEFENSE COUNSEL:] སྭ”and [Lewis] was walking up the stairs”?  

[MARABLE:] No.

[DEFENSE COUNSEL:] Did you tell them that the policeསྭdid you tell the police that they were in there cutting cocaine and somebody ran in and shotསྭshot the place up?
(footnote: 2)
 

[MARABLE:] No.

[DEFENSE COUNSEL:] And the police wrote all of these things down, and you just signed the statement without reading it?

[MARABLE:] He didn’t tell meསྭhe just telling me to sign right here, and I signed right there.  And he let me go.  Well, he took me back to the building. 

On redirect, the State offered Marable’s written statement into evidence under the rule of optional completeness.  
See
 
Tex. R. Evid.
 107.  Appellant objected, arguing the statement did not fall within the rule of optional completeness and thus was inadmissible hearsay.  The trial court overruled appellant’s objection and admitted Marable’s statement. 

We review the trial court’s admission of evidence for an abuse of discretion.  
See Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); 
see also
 
Wright v. State
, 28 S.W.3d 526, 535-36 (Tex. Crim. App. 2000) (applying abuse of discretion standard to rule of optional completeness issue), 
cert. denied
, 531 U.S. 1128 (2001); 
West
 
v. State
, 121 S.W.3d 95, 100 (Tex. App.སྭFort Worth 2003, pet. ref’d) (same).  According to rule 107 of the rules of evidence,

When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.  

Tex. R. Evid.
 107.  To be admitted under rule 107, “the omitted portion of the statement must be ‘on the same subject’ and must be ‘necessary to make it fully understood.’“  
Sauceda v. State
, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004) (citing 
Tex. R. Evid.
 107).  ”Rule 107 is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter ‘opened up’ by the adverse party.”  
Credille v. State
, 925 S.W.2d 112, 116 (Tex. App.སྭHouston [14th Dist.] 1996, pet. ref’d).  “The so-called rule of optional completeness takes effect when other evidence has already been introduced but is incomplete and misleading.”  
Jones v. State
, 963 S.W.2d 177, 182 (Tex. App.སྭFort Worth 1998, pet. ref’d).  Once a party opens an evidentiary door, the rule allows the opposing party to complete the picture.  
West
, 121 S.W.3d at 103.  However, the party who opens an evidentiary door may not then invoke the rule to further exploit an improper line of questioning.  
Id.

A party may not introduce an entire statement under the rule of optional completeness by merely referring to the statement or a quotation from the statement.  
See Goldberg v. State
, 95 S.W.3d 345, 387 (Tex. App.སྭHouston [1st Dist.] 2002, pet. ref’d), 
cert. denied
, 540 U.S. 1190 (2004).  But a party may invoke the rule when an opposing party reads part, but not all, of the statement into evidence.  
See id
. at 386.  When this happens, the remainder of the statement on the same subject is admissible to reduce the possibility of the fact finder receiving a false impression.  
Id
.
  
 

Appellant argues that Marable’s entire written statement was not “on the same subject” as the portion of the statement admitted through his questioning and was not necessary to make the portion fully understood.  He also argues that the State was the party who “opened the door” by implying that Marable’s written statement was consistent with her trial testimony and that therefore the State may not invoke the rule of optional completeness.  We disagree.  

Appellant questioned Marable about certain inconsistencies between her written statement and her trial testimony, such as the exact time Marable arrived at the apartment and whether she fell asleep once she was there.  In addition, appellant read a portion of Marable’s written statement, in which she stated that she arrived at the apartment around 5:00 p.m. and fell asleep and slept for an hour.  Appellant then asked Marable whether she told the police that people in the apartment were cutting cocaine when someone came in and shot the place up even though Marable did not mention this in her written statement.  By questioning Marable in this manner, appellant created the impression that Marable’s statement contained more than it actually did, namely, information regarding drug use in the apartment and someone shooting the place up.  Moreover, Marable’s written statement and the portion introduced by appellant during his cross-examination of Marable were on the “same subject,” that is, the subject of what happened at Mitchell’s apartment on February 11, 2003.  Therefore, we hold that the trial court did not abuse its discretion by admitting Marable’s written statement under the rule of optional completeness.  The statement was admissible under rule 107 even if it constituted otherwise inadmissible hearsay.  We overrule appellant’s first issue. 

IV. Opening Statement

In his second issue, appellant argues that the trial court erred by prohibiting him from discussing the law of self-defense during his opening statement.  In his third issue, appellant argues that the trial court also erred by prohibiting him from using exhibits that explained the law of self-defense during his opening statement.

During his opening statement, appellant began to discuss the law of self-defense by stating the following:

The law of self-defense, I anticipate that the Judge will tell you this in his charge to you, and we’ll introduce evidence of self-defense, additional evidence of self-defense; but a person is justified in using force, and the Judge is going to tell you about all of the law, including the self-defense and the right to use deadly force, but a person is justified in using force against another person when and to the degree he reasonably believes that the force is immediately necessary to protect himself against another’s use or attempted use of unlawful force. 

The State objected, contending that appellant’s opening statement was argument.  The trial court sustained the State’s objection.  Appellant then made an offer regarding his planned opening statement, which included the use of several charts that explained the law of self-defense and one chart that applied part of the law of self-defense to the facts in the case.  The trial court marked the charts as Court’s Exhibits 1 through 4 and ruled that they could not be used during appellant’s opening statement. 

Generally, trial courts have broad discretion in managing the course of a trial.  
Dang v. State
, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005).  As a corollary, trial courts have discretion to control opening statements and limit them to their proper scope.  
Dugan v. State
, 82 Tex. Crim. 422, 199 S.W. 616, 617 (1917).  Therefore, we will review the trial court’s decision to limit appellant’s opening statement for abuse of discretion.   

Article 36.01 of the code of criminal procedure allows the defendant to state the “nature of the defenses relied upon and the facts expected to be proved in their support.”  
Tex. Code Crim. Proc. Ann.
 art. 36.01(a)(5) (Vernon Supp. 2004-05).  Through an opening statement, the defendant is able to communicate to the jury his theory of the case in order to aid the jury in evaluating and understanding the evidence as it is being presented.  
See Twine v. State
, 970 S.W.2d 18, 19 (Tex. Crim. App. 1998) (McCormick, J., concurring); 
Parra v. State
, 935 S.W.2d 862, 871 (Tex. App.སྭTexarkana 1996, pet. ref’d).  However, the trial court has the duty to instruct the jury on the applicable law.  
Holladay v. State
, 709 S.W.2d 194, 199 (Tex. Crim. App. 1986).  According to article 36.14 of the code of criminal procedure, the trial court, not the parties, shall “deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case.”  
Tex. Code Crim. Proc. Ann.
 art. 36.14.  

In the present case, the trial court prohibited appellant from discussing, along with the use of charts, the law of self-defense in the abstract.  However, the trial court did not prohibit appellant from stating the nature of the defenses relied on and the facts that he expected to prove.  In fact, appellant mentioned several times during his opening statement that he acted in self-defense.  Moreover, appellant discussed facts that he intended to prove to support his claim of self-defense, such as the fact that Lewis carried a gun and had once threatened to shoot Lewis’s aunt and uncle. 

Appellant cites no authority for the proposition that a trial court abuses its discretion by not allowing a defendant to discuss the law of a particular defense in the abstract during the defendant’s opening statement.  Therefore, we hold that the trial court did not abuse its discretion by prohibiting appellant from discussing the law of self-defense and from using charts that explained the law of self-defense during his opening statement.   We overrule appellant’s second and third issues.  

V. Imprisonment 

We will address appellant’s fifth and sixth issues next because, unlike appellant’s fourth issue, they pertain to the guilt-innocence phase of the trial.  In his fifth issue appellant argues that the trial court erred by allowing testimony that appellant had been imprisoned for eight years.  In his sixth issue, appellant argues that the trial court erred by refusing to instruct the jury to disregard testimony that appellant had been imprisoned for eight years.  Because appellant’s fifth and sixth issues are related, we will address them together.  

During appellant’s case-in-chief, he asked defense witness Clifford Burton how long he had known appellant.  Burton respond, “Ira, when he got locked up back in time, I was small.  Then I remember his face, and then I refresh his memory, I been knowing Ira for like three years.”  Appellant did not object to Burton’s testimony.  During the State’s cross-examination of Burton, the following exchange occurred:

[STATE:]  Okay.  You said that you have been knowing [appellant] since he got out after being locked up, right?  That was after the Defense lawyer asked you a question, right?

[BURTON:]  Yeah.

[STATE:]  How long had he been locked up as far as you know?

[DEFENSE COUNSEL:]  Object to relevancy.

THE COURT:  Overruled.

[STATE:]  Do you know how long he had been locked up?

[BURTON:]  Eight years, as far as I know.

[STATE:]  He did eight years in the penitentiary.  

[BURTON:]  Uh-huh. 

[STATE:]  And he came back out of the penitentiary November before this happened, before this killing happened?

[BURTON:]  Yeah.

Shortly thereafter, the following occurred:

[STATE:]  So he comes back to the neighborhood after doing eight years in the penitentiary?

[DEFENSE COUNSEL:]  Judge, I object.  I think it is a violation of the Motion in Limine, if it please the Court. 

The trial court then called the attorneys to the bench and asked the State where it was going.  The State ultimately agreed to move on from its line of questioning.  Appellant requested the trial court to instruct the jury to disregard the fact that appellant had been locked up for eight years, but the trial court refused. 

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  
A party must continue to object each time inadmissible evidence is offered unless the party (1) asks for and receives a running objection, or (2) objects and receives a ruling outside the presence of the jury.  
Tex. R. 
Evid. 103(a)(1); 
Ethington v. State
, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); 
Beheler v. State
, 3 S.W.3d 182, 187 (Tex. App.སྭFort Worth 1999, pet. ref’d).

In the present case, appellant objected after the State’s initial question to Burton regarding the length of appellant’s incarceration.  But appellant did not object afterwards when the State asked Burton whether appellant had done eight years in the penitentiary and whether appellant had gotten out of the penitentiary in November before the shooting.  Appellant never asked for a running objection or a hearing outside of the jury’s presence so that he would not have to constantly object.  
See
 
Ethington
, 819 S.W.2d at 859.  
Although appellant did receive a ruling outside the jury’s presence, the ruling did not come until after the State had asked several questions and received several answers regarding appellant’s incarceration.  Thus, appellant failed to preserve error.  We overrule appellant’s fifth and sixth issues.

VI. Sudden Passion

In his fourth issue, appellant argues that the trial court’s failure to find “sudden passion” under section 19.02 of the penal code was so against the great weight and preponderance of the evidence as to be manifestly unjust.  Before voir dire, appellant elected to have the trial court assess punishment if the jury found him guilty.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 37.07, ྷ 2(b) (Vernon Supp. 2004-05).  The jury found appellant guilty of murder, and after a punishment hearing, the trial court assessed appellant’s punishment at forty years’ confinement.  Further, the trial court declined to find that appellant acted under the influence of sudden passion, stating, “The sudden passion, I do not make a finding on sudden passion.  That sudden passion should arise from an adequate cause.  He wanted to fight you and you don’t get to shoot somebody if they want to fight.” 

Normally, the offense of murder is a first-degree felony.  
Tex. Penal Code Ann.
 § 19.02(c) (Vernon 2003).  But according to section 19.02(d) of the penal code,

At the punishment stage of trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause.  If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.  

Id
. § 19.02(d).

“Sudden  passion” is defined as “passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.”  
Id.
 § 19.02(a)(2).  
The penal code defines “adequate cause” as “cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.”  
Id. § 
19.02(a)(1).
  
However, a defendant may not rely on a cause of his own making, such as when he precipitates a confrontation.  
Naasz v. State
, 974 S.W.2d 418, 423 (Tex. App.སྭDallas 1998, pet. ref’d); 
Nance v. State
, 807 S.W.2d 855, 861 (Tex. App.སྭCorpus Christi 1991, pet. ref’d).

In reviewing appellant’s issue, we must consider all the evidence relevant to the issue of sudden passion to determine whether the trial court’s finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust.  
Hernandez v. State
, 127 S.W.3d 206, 212 (Tex. App.སྭHouston [1st Dist.] 2003, pet. ref’d); 
Vasquez v. State
, 84 S.W.3d 269, 271 (Tex. App.སྭCorpus Christi 2002, no pet.).  We
 are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004); 
Hernandez
 127 S.W.3d at 212.  Furthermore, we are to give deference to the trial court’s determinations, including determinations involving the credibility and demeanor of witnesses.  
See Zuniga
 at 481
.  We may not substitute our judgment for that of the trial court’s.  
See id.
 at 482.

In the present case, both eye witnesses to the shooting, Jimmy Lenard and Teneshia Marable, testified that appellant and Lewis began to argue shortly after Lewis arrived at Mitchell’s apartment.  Marable testified that appellant stood up from the couch he was sitting on holding a gun.  Lenard testified that appellant stood up from the couch and walked toward Lewis holding the gun.  From this evidence, the trial court could have found that appellant provoked the incident and therefore did not act under the immediate influence of sudden passion arising from an adequate cause.  
See
 
Naasz
, 974 S.W.2d at 423; 
Nance
, 807 S.W.2d at 861.

Accordingly, the trial court’s negative finding on the issue of sudden passion was not so against the great weight and preponderance of the evidence as to be unjust.  We overrule appellant’s fourth issue.
        

VII. Conclusion

Having overruled all of appellant’s issues, we affirm the trial court’s judgment.      

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  September 15, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Marable did not say anything in her written statement about people cutting cocaine in the apartment or someone shooting the place up.