NUMBER 13-05-622-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







MELVIN KETCHUM
, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 347th District Court


of Nueces County, Texas.






O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Castillo


Opinion by Justice Castillo



 The indictment charged appellant Melvin Ketchum with two counts of
aggravated sexual assault of a child, with an enhancement paragraph for a prior felony
sexual assault conviction. (1) A jury returned a guilty verdict on both counts and the trial
court assessed punishment for each count at life imprisonment. Ketchum presents five
points of error on appeal. We affirm. 

I. BACKGROUND

 Catherine Abernethy, school counselor, was alerted by a student that another
student had been "hurt" by an adult. After calling in C.M., the alleged victim, she
learned that the minor girl had been sexually assaulted two years prior by a male
neighbor, Melvin Ketchum, when the girl was nine years of age. Abernethy contacted
the principal of the school, who alerted officials. Constable Zenner took the report and
contacted the victim's father. Appointments were made for the victim at Driscoll
Children's Hospital and the Children's Advocacy Center. At the hospital, sexual
assault nurse examiner Carol McLaughlin examined the victim and found no physical
evidence, which she testified was to be expected as it had been two years since the
incident. At the Children's Advocacy Center, Ricardo Jimenez, a Nueces County
forensic interviewer, conducted a video interview with the victim. The videotape was
admitted in evidence. 

 The victim stated that on or about June 25, 2003, she and her younger brother
stayed at Ketchum's house for the night while their dad went out with friends. 
Around two o'clock in the morning, she and her brother were awakened by Ketchum
and his wife, Cena O'Brien (O'Brien testified that neither the victim nor her brother had
ever stayed the night with them). Ketchum asked them if they wanted to go fishing. 
The brother said yes and the victim claims she also went because she did not want to
leave her brother alone. Once at the pier, Ketchum left the victim's brother with a
family who were fishing. He then took the victim back to the car, telling her that
"little girls need to take naps." Once they were both inside the car, he locked the
doors and engaged in sexual conduct by digital penetration and contact of sexual
organs. The next day the victim told her father she was bleeding from her private
area. He said he asked Terry Yeager, the landlord of their trailer park, for help as he
thought the child was starting her first menstrual cycle. Yeager thought it was odd
that the victim was starting her menstrual cycle at age nine, but took the victim to get
pads without asking questions. The bleeding lasted a day or two, however it was
determined not to be a menstrual cycle. Nurse McLaughlin supported that fact with
the finding that the victim was still prepubescent at the time of the examination, two
years post-offense. 

 While waiting for trial, Ketchum discussed his case with a fellow inmate, Mickey
Wayne Boswell, who then testified against him in court. Boswell stated Ketchum
admitted that he did sexually assault the victim and would have penetrated her with
his sexual organ but could not. II. ISSUES PRESENTED

 Ketchum asserts five points of error. In his first point, Ketchum argues that the
trial court violated his due process right to notice under the sixth and fourteenth
amendments of the United States Constitution when it allowed the State to present
enhancement evidence, over Ketchum's objection of untimely notice, of the State's
intent to offer enhancement evidence. In his second point of error, Ketchum asserts
that the evidence was factually insufficient to support the verdict. In his third point
of error, Ketchum maintains that the trial court erred in denying his motion for mistrial
after a State's witness provided unsolicited extraneous offense evidence of a pistol
underneath the backseat of Ketchum's car at the time of the offense. In his fourth
point of error, Ketchum complains of ineffective assistance of counsel based on a
cumulation of multiple errors at trial. In his fifth point of error, Ketchum argues that
the trial court erred in denying a mistrial based on prosecutorial misconduct which
permitted the prosecutor to inject his opinion as to Ketchum's guilt.

III. FACTUAL SUFFICIENCY

 In his second point of error, Ketchum argues that evidence presented at trial
was factually insufficient to support the verdict. Specifically, he argues that the date
of the offense was never proven beyond a reasonable doubt, and the proof of guilt
based on the victim's testimony was so weak as to undermine confidence in the jury's
determination that all of the elements of the offenses were proven. The State
responds that the evidence was factually sufficient to support the verdict, and that
Ketchum's challenge as to the date of the incident holds no merit because the date
alleged is simply to satisfy the statute of limitations requirement. The State also
responds that there is additional corroboration to the child victim's testimony, including
Ketchum's confession to a fellow inmate, to satisfy the beyond-a-reasonable-doubt
standard.A. Standard of Review

 In a factual sufficiency review, we view all the evidence in a neutral light and
set aside the verdict if "proof of guilt is so obviously weak as to undermine confidence
in the jury's determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof." Vodochodsky v. State, 158 S.W.3d 502, 510
(Tex. Crim. App. 2005) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)); Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex. Crim. App. 2003). 

 There are two ways in which the evidence may be insufficient. Zuniga v. State,
144 S.W.3d 477, 484 (Tex. Crim. App. 2004). First, when considered by itself,
evidence supporting the verdict may be too weak to support the finding of guilt beyond
a reasonable doubt. Id. at 484-85. Second, there may be both evidence supporting
the verdict and evidence contrary to the verdict. Id. Weighing all the evidence under
this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not
stand. Id. This standard acknowledges that evidence of guilt can 'preponderate' in
favor of conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt. Id. 

 In conducting our review, we consider all of the evidence weighed by the jury,
comparing the evidence which tends to prove the existence of the elemental fact in
dispute to the evidence which tends to disprove it. Johnson, 23 S.W.3d at 6-7 (citing
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). We are authorized
to disagree with the jury's determination even if probative evidence exists which
supports the verdict, but we must avoid substituting our judgment for that of the fact-finder. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997) (en banc). 
 In conducting a factual-sufficiency review in an opinion, we "show our work"
when we consider and address the appellant's main argument for urging insufficiency
of the evidence. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003);
Johnson, 23 S.W.3d at 9; Manning v. State, 112 S.W.3d 740, 747 (Tex.
App.-Houston [14th Dist.] 2003, pet. denied); see Tex. R. App. P. 47.1. This practice
benefits the parties, maintains the integrity of the justice system, and improves
appellate practice. Sims, 99 S.W.3d at 603; Manning, 112 S.W.3d at 747.

 We measure sufficiency of the evidence against the elements of the offense as
defined by a hypothetically correct jury charge for the case. Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.-Corpus Christi 2002, pet. ref'd). This standard ensures that a judgment of
acquittal is reserved for those situations in which there is an actual failure in the
State's proof of the crime rather than a mere error in the jury charge submitted. Malik,
953 S.W.2d at 240. We then determine if any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. (2) Jackson v. Virginia,
443 U.S. 307, 319 (1979). A hypothetically correct jury charge is one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily increase the
State's burden of proof or restrict its theories of liability, and adequately describes the
particular offense. Malik, 953 S.W.2d at 240. 

B. Elements of the Offenses As to Count One, the State must prove beyond a reasonable doubt that (1) on
or about June 25, 2003, (2) Ketchum intentionally or knowingly (3) caused the sexual
organ of the victim to contact his sexual organ and (4) the victim was a child younger
than fourteen years of age and not married to the Ketchum. See Tex. Pen. Code Ann.
§§ 22.011(c)(1), 22.021(a)(1)(B)(iii) (Vernon 2005); Adi, 94 S.W.3d at 131. 

 Similarly, as to Count Two, the State must prove beyond a reasonable doubt
that (1) on or about June 25, 2003, (2) Ketchum intentionally or knowingly (3) caused
digital penetration of the victim's sexual organ, and (4) the victim was a child younger
than fourteen years of age and not married to Ketchum. See Tex. Pen. Code Ann. §§
22.011(c)(1), 22.021(a)(1)(B)(iii); Adi 94 S.W.3d at 131. 


C. Application to Counts One and Two of the Indictment

 The victim testified that, on or about June 25, 2003, Ketchum awakened the
victim and her brother at approximately two o'clock in the morning and took them to
a pier to fish. At some point that night, Ketchum left the brother with a family at the
pier and took the victim back to the car, telling her "little girls need to take naps." The
victim testified that, once in the car, Ketchum locked the doors, ordered her to assume
a sexual position, and engaged in sexual contact by his sexual organ and by digital
penetration.

1. The Date of the Offense

 Ketchum argues that the State never proved the first element, the date of the
offense, beyond a reasonable doubt. (3) However, unless the date is a material element
of an offense, it is not necessary for an indictment to specify the precise date on
which the charged offense occurred. See Garcia v. State, 981 S.W.2d 683, 685-86
(Tex. Crim. App. 1998) (en banc). The primary purpose of specifying a date in the
indictment is not to notify the accused of the date of the offense. Id. at 686. Rather,
the purpose of providing a date is to show that the prosecution is not barred by the
statute of limitation. Id. 

 When an indictment alleges that a crime occurred "on or about" a certain date,
the State may prove an offense "with a date other than the one specifically alleged so
long as the date is anterior to the presentment of the indictment and within the
statutory limitation period and the offense relied upon otherwise meets the description
of the offense contained in the indictment." Yzaguirre v. State, 957 S.W.2d 38, 39
(Tex. Crim. App. 1997) (en banc) (quoting Sledge v. State, 953 S.W.2d 253, 256-57
(Tex. Crim. App. 1997) (en banc)). The statutory period of limitation for indecency
with a child is ten years from the child's eighteenth birthday. Tex. Code Crim. Proc.
Ann. art. 12.01(5)(A) (Vernon 2005). Thus, the hypothetically correct jury charge in
this case would instruct the jury that the State could prove that the charged offenses
were committed before, on, or after the dates alleged in the indictment so long as the
dates were before the date of the indictment and within the applicable limitation
period. Mireles v. State, 901 S.W.2d 458, 459 (Tex. Crim. App. 1995) (en banc). 

 In this case, the superceding indictment was filed on August 18, 2005, and
alleged the offense occurred on or about June 25, 2003. The victim's testimony that
the assaults occurred in 2003 places the date of the offenses well within the
applicable ten-year limitation. Mireles, 901 S.W.2d at 459. 

 As contrary evidence, Ketchum points to the testimony of Cena O'Brien, his
common law wife. O'Brien testified that the victim never spent the night at the
Ketchum residence. Ketchum also points to the testimony of other State witnesses
who testified as to events in 2004 rather than in 2003. He argues that the victim did
not outcry until she was eleven years of age. Within those two years, she continued
to live in the same trailer park as Ketchum and played with his two sons. Ketchum
challenges the victim's testimony that she did not tell her father about the incident
because she was afraid of what he would do to Ketchum. However, the victim also
testified that whenever Ketchum came by her home, she would climb a tree so no one
could reach her. Further, the jury heard expert testimony that many times child abuse
victims do not outcry right away for various reasons including fear and shame. 

 We remain mindful of the jury's role to resolve conflicts in testimony. See
Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998) (en banc) (questions
concerning the credibility of the witnesses and the weight to be given their testimony
are to be resolved by the trier of fact); Esquivel v. State, 506 S.W.2d 613, 615 (Tex.
Crim. App. 1974). The jury as the fact finder could have disbelieved all the witnesses
or any of them, and was free to reject their testimony. Mosley, 983 S.W.2d at 254;
Esquivel, 506 S.W.2d at 615. We must assume that the fact finder resolved conflicts,
including conflicting inferences, in favor of the verdict and must defer to that
resolution. Matchett v. State, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996) (en
banc). Based on its resolution of the facts and credibility determinations, the jury
implicitly rejected evidence Ketchum considers favorable to his defense. We conclude
that evidence of the date of the offense is factually sufficient. 

2. The Remaining Essential Elements

 The testimony of a child sexual abuse victim alone is sufficient to support a
conviction for aggravated sexual assault. See Tex. Code Crim. Proc. Ann. art. 38.07
(Vernon 2005); Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). 
Courts give wide latitude to testimony given by child victims of sexual abuse. See
Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). The
victim's description of what happened to her need not be precise, and she is not
expected to express herself at the same level of sophistication as an adult. See id. 

 In this case, the victim testified that Ketchum left the victim's brother at the pier
and took her to go to the car with him under the pretext that she must take a nap. 
The victim graphically described the incidents of sexual contact and conduct that
occurred while alone with Ketchum in the locked car. The jury heard that the victim
bled the day after the incident and was prepubescent at the time of trial. Although
Ketchum argues there is no medical record of the bleeding, there is no requirement that
the victim's testimony be corroborated by medical or physical evidence. Garcia, 563
S.W.2d at 928; Kemple v. State, 725 S.W.2d 483, 485 (Tex. App.-Corpus Christi
1987, pet. ref'd, untimely filed). The jury heard that Ketchum admitted the offenses
to jail inmate Boswell. The jury also heard that the victim was under fourteen years
of age and not married to Ketchum at the time of the incident. D. Disposition

 Favoring neither the prosecution nor the defense, and with appropriate
deference to the jury's credibility determinations, we conclude that the evidence
supporting the verdict is not too weak to support the jury's finding of guilt beyond a
reasonable doubt. Zuniga, 144 S.W.3d at 484-85; Esquivel, 506 S.W.2d at 615. Nor
is the weight of the evidence contrary to the verdict strong enough that the State
could not have met its burden of proof. Zuniga, 144 S.W.3d at 484-85. We conclude
that the evidence is sufficient for a rational trier of fact to conclude there was contact
with and penetration of the victim's sexual organ as alleged in Counts One and Two
of the indictment as measured against the hypothetically correct jury charge. Tex. Pen.
Code Ann. §§ 22.011(c)(1), 22.021(a)(1)(B)(iii); Adi, 94 S.W.3d at 131. 

 Accordingly, we overrule Ketchum's second point of error. IV. NOTICE OF ENHANCEMENT IN SUPERCEDING INDICTMENT

 By his first point of error, Ketchum asserts that the trial court violated his due
process rights by (1) enhancing punishment even though the State failed to provide
timely notice that it would seek the enhancement, and (2) admitting enhancement
evidence. The State responds that Ketchum did not preserve error and, in any event,
Ketchum had timely notice of the enhancement allegation.

A. The Record

 The record shows that Ketchum was arrested on March 10, 2005. The original
indictment, dated April 21, 2005, alleged two counts of sexual conduct with a child. 
A re-indictment, dated May 26, 2005, added an enhancement paragraph that alleged
Ketchum was previously convicted of felony sexual assault in Harris County. A final
re-indictment, dated August 18, 2005, changed the date of the substantive offense
in each count from June 25, 2004, to June 25, 2003.

 During pre-trial proceedings on August 22, 2005, the prosecutor stated that
punishment was not an issue because Ketchum was facing an automatic life sentence. 
Defense counsel alleged that the State did not meet the statutory notice requirements
with respect to the enhancement paragraph. Defense counsel stated that neither he
nor Ketchum received the May 26, 2005, superceding indictment, and that they did
not receive the August 18, 2005, re-indictment until August 22, 2005. Defense
counsel stated, "I am not going to say that we weren't aware that he had been
convicted but for official notice of the enhancement, we just received that today on
the [current indictment]." The prosecutor responded that she provided verbal notice
on different occasions, including once to Ketchum personally. Further, Ketchum had
requested appointment of co-counsel because he was facing an automatic life
sentence. Before trial on the merits commenced, the following colloquy between
Ketchum and his counsel occurred:

 Defense Counsel: [Ketchum], you understand if convicted of this offense
that the sentence is automatic life in prison?


 [Ketchum]: Yes, sir. 

The trial court verbally ruled, "There is no question they had notice." Defense counsel
requested the trial court dismiss the enhancement if it found there was no arraignment
on the August 22, 2005, indictment. The trial court ruled that it would reset the case
to comply the statutory ten-day notice requirement if Ketchum requested the
extension. The trial court denied the request to strike the enhancement paragraph. 
After conferring with Ketchum, defense counsel announced that Ketchum waived his
ten-day notice. The trial court then re-arraigned Ketchum with respect to the new
indictment. The following ensued:

 The Court: Have you received a copy of the superseding indictment? 
We are now on our third indictment. Have you had that for 10 days?


 [Ketchum]: No, he [sic] hasn't.


 The Court: Do you waive the ten-day notice period?


 [Ketchum]: Yes.


Trial commenced. After the jury returned the guilty verdict, which the trial court
accepted, defense counsel renewed the objection as to lack of timely notice of the
enhancement paragraph. Defense counsel stated that the waiver of the ten-day notice
period applied only to proceeding to trial. The trial court overruled the objection. 
Ketchum pled true to the enhancement paragraph. When the State offered the
penitentiary packet in evidence, defense counsel stated, "No objections." The
penitentiary pack was admitted in evidence. Finding the enhancement paragraph true,
the trial court pronounced punishment at life imprisonment for each count and ordered
the sentences to run concurrently. 

B. Timely Notice of the Enhancement Allegation The accused is entitled to a description of the judgment of any former
convictions that will enable him to find the record and make preparation for a trial on
the question of whether he is the named convict therein. Villescas v. State, 189
S.W.3d 290, 293 n.14 (Tex. Crim. App. 2006) (quoting Morman v. State, 5 S.W.2d
886, 887 (1934)); see Coleman v. State, 577 S.W.2d 486, 488 (Tex. Crim. App.
1979) (holding that the purpose of an enhancement allegation is to provide the
accused with notice of the prior conviction relied upon by the State). The State must
plead in some form any enhancement allegations which it intends to prove during the
punishment phase of trial. Hackett v. State, 160 S.W.3d 588, 590 (Tex. App.-Waco
2005, pet. ref'd) (en banc) (citing Brooks v. State, 957 S.W.2d 30, 33-34 (Tex. Crim.
App. 1997)). Proper notice of intent to enhance punishment must be given in a timely
manner, but it need not be pled in the indictment itself to be considered proper notice,
so long as it is pled "in some form." Brooks, 957 S.W.2d at 33. With respect to the
timeliness of the notice, the Texas Court of Criminal Appeals has recently held that the
Brooks notice requirement is of constitutional origin and that the ultimate question is
whether constitutionally adequate notice was given. Villescas, 189 S.W.3d at 294. 
Thus, for due process purposes, the determination of whether proper notice was given
does not require that the notice be given within a particular time period either before
trial or even before the guilt phase of trial. Id. The ultimate question is whether
constitutionally adequate notice was given. Id. Due process does not require that the
notice be given before the guilt phase begins, much less that it be given a number days
before trial. Id. When the accused has no defense to the enhancement allegation and
has not suggested the need for a continuance in order to prepare one, notice given at
the beginning of the punishment phase satisfies due process. See id. The trial court
may cure the notice problem by granting a continuance. Id. C. Application

 In determining whether Ketchum was provided sufficient notice of the State's
intent to enhance punishment, we observe the record does not suggest Ketchum's
defense was in any way impaired by the timing of the State's enhancement notice. 
Ketchum did not claim that he was unprepared to defend against the prior conviction,
and defense counsel affirmatively stated he was aware of the prior conviction. 
Further, Ketchum testified he knew he was facing an automatic life sentence if
convicted. Ketchum expressly waived additional time to prepare in response to the
trial court's inquiry before trial. He expressly declined the trial court's offer to grant
a continuance if requested. Ketchum pled true to the enhancement paragraph, did not
object to the evidence admitted to support it, and had no defense against it. 

 After considering these facts and circumstances, we conclude that Ketchum did
not preserve error. See Martinez v. State, 91 S.W.3d 331, 336-37 (Tex. Crim. App.
2002) (holding that an accused must advance his complaints at a time when there is
an opportunity to respond to them or cure them and we may not reverse a trial court's
ruling on any theory or basis that might have been applicable to the case but was not
raised). Even assuming he preserved error, Ketchum did not state that a continuance
was necessary to discover or prepare a defense and, accordingly, he received the
notice minimally required to satisfy due process. See Villescas, 189 S.W.3d at 294. 
Further, even assuming the State failed to give adequate notice of its intent to use the
prior convictions for enhancement purposes, any error was rendered harmless because
Ketchum did not request a continuance. See Tex. R. App. P. 44.2(a).

 Moreover, Ketchum did not preserve error as to enhancement evidence when
he failed to object to the penitentiary packet. "All a party has to do to avoid the
forfeiture of a complaint on appeal is to let the trial judge know what he wants, why
he thinks himself entitled to it, and to do so clearly enough for the judge to understand
him at a time when the trial court is in a proper position to do something about it." 
Keeter v. State, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005) (en banc) (quoting
Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)); Martinez, 91
S.W.3d at 336. Thus, even assuming Ketchum did not have adequate notice of
punishment enhancement, he did not object to the evidence proffered to support the
enhancement. Accordingly, we cannot conclude beyond a reasonable doubt that error
contributed to the punishment assessed. See Tex. R. App. P. 44.2(a). 

 We overrule Ketchum's first point of error presented. 

V. EXTRANEOUS OFFENSE EVIDENCE

 By his third point of error, Ketchum asserts that the trial court erred in denying
his motion for mistrial after the victim's father provided unsolicited testimony that the
victim saw a pistol in Ketchum's car. Ketchum maintains that the witness divulged
an inadmissible extraneous bad act. The State concedes that a person commits an
offense if he carries a handgun on his person (4) but counters that evidence of a pistol
out of Ketchum's reach is not evidence of an extraneous offense. The State further
responds that Ketchum has not shown harm. 

 Assuming without deciding that Ketchum has shown error, he is not entitled to
reversal unless he shows that the error was (1) of constitutional magnitude, or (2)
affected a substantial right. See Tex. R. App. P.  44.2(a), (b). A violation of rules of
evidence that results in erroneous admission of evidence is non-constitutional error
under rule 44.2(b). Reyes v. State, 69 S.W.3d 725, 742 (Tex. App.-Corpus Christi
2002, pet. ref'd); Couchman v. State, 3 S.W.3d 155, 160 (Tex. App.-Fort Worth
1999, pet. ref'd). 

 In this case, the offending statement occurred during the culpability phase of
the trial. The charged offenses involved two counts of sexual contact with a child. 
The record does not demonstrate that the weapon was an instrumentality of the
offense or that the testifying witness made the statement to inflame the minds of the
jury. The unchallenged evidence in this case permitted the jury to find all of the
elements of the charged offenses. Indeed, nothing suggests the jury would have come
back with a different verdict without the unsolicited evidence of a pistol in the rear
area of the vehicle. We conclude that Ketchum was not harmed by the admission of
the complained-of statement during the guilt-innocence phase of the trial. See Tex. R.
App. P. 44.2(b).

 Moreover, even assuming harm, a prompt instruction to disregard generally
cures the prejudicial effect of effect of improper testimony, even that regarding an
extraneous offense. See Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000)
(per curiam); Hackett, 160 S.W.3d at 592. An instruction to disregard attempts to
cure any harm or prejudice resulting from events that have already occurred. (5) Young
v. State, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (en banc). Where the prejudice
is curable, an instruction eliminates the need for a mistrial. Id. In this case, the trial
court instructed the jury to disregard the complained-of testimony, at Ketchum's
request, before the witness testified further. The instruction was prompt. We
conclude that the trial court's instruction cured any prejudice. (6) Ovalle, 13 S.W.3d at
784; Hackett, 160 S.W.3d at 592. Ketchum moved for a mistrial which the trial court
denied. Because the prejudice was cured, a mistrial was unnecessary. See Young,
137 S.W.3d at 69.

 We overrule Ketchum's third point of error presented. 

VI. EFFECTIVE ASSISTANCE OF COUNSEL

 By his fourth point of error, Ketchum asserts that his two trial counsel were
ineffective because, in particular, trial counsel failed to (1) object during the
prosecutor's opening statement, (2) object to opinion testimony of an outcry witness,
(3) call his mother to testify, and (4) prevent disclosure of Ketchum's alibi defense. 
The State responds that the record does not demonstrate ineffectiveness of counsel
or harm.


A. Standard of Review

 To establish ineffective assistance of counsel, Ketchum must show by a
preponderance of the evidence that his counsel's representation fell below the
standard of prevailing professional norms and that there is a reasonable probability
that, but for counsel's deficiency, the result of the trial would have been different. (7)
 
Strickland v. Washington, 466 U.S. 668, 687 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999). The failure to satisfy one prong of the Strickland test negates a
court's need to consider the other. See Strickland, 466 U.S. at 697. 

 Isolated instances in the record reflecting errors of omission or commission do
not render counsel's performance ineffective, nor can ineffective assistance of counsel
be established by isolating one portion of trial counsel's performance for examination. 
Robertson v. State, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (quoting McFarland
v. State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992)). Counsel's performance is
judged by "the totality of the representation" and, "judicial scrutiny of counsel's
performance must be highly deferential" with every effort made to eliminate the
distorting effects of hindsight. Id. (quoting Ingham v. State, 679 S.W.2d 503, 509
(Tex. Crim. App.1984)). The Supreme Court in Strickland cautioned that intrusive
post-trial inquiry into attorney performance should be avoided because that would
encourage the proliferation of ineffectiveness challenges. Id . (citing Strickland, 466
U.S. at 690). 

B. The Motion for New Trial Record

 Ketchum timely filed a motion for new trial. In the motion he asserted that he
was denied effective assistance of counsel because counsel failed to (1) properly
investigate the case before trial, (2) exercise due diligence to obtain exculpatory
information from witnesses not called to testify, and (3) prevent pretrial disclosure of
his alibi defense. The trial court convened a hearing on Ketchum's motion. Ketchum
and one of his two trial attorneys testified. 

1. Failure to Call a Witness to Testify

 Ketchum testified that trial counsel failed to call Ketchum's mother to testify. 
His mother lived with him throughout 2003, the year of the alleged offense. 
Ostensibly, she would have testified that the victim did not spend the night at
Ketchum's residence.


2. Pretrial Disclosure of Alibi Evidence

 Ketchum maintained that the superceding indictment changed the date of the
offense after he and his trial counsel met with the prosecutor and provided an alibi for
the date contained in the original indictment. The record shows that the superceding
indictment alleged the offense occurred in 2003, instead of the original alleged date
in 2004. Ketchum testified on direct examination as follows:

 Q. Whose idea was that to proceed with telling a prosecutor your alibis
before trial? Yours or your lawyers?


 A. My lawyer's [sic] at first.


 Q. Did you agree with him to do that?


 A. Yes, because it would be thrown out. If it wasn't, he was going to
her boss and have it thrown out.


3. Trial Counsel's Testimony


 The State called one of Ketchum's trial counsel to testify. Trial counsel stated
that the main defense was to emphasize inconsistencies in the victim's various
statements as to the offense and inconsistencies as to the date of the offense. With
respect to the date of the offense, trial counsel explained that the testifying adults
were "adamant" that the offense occurred in 2004 and not in 2003, as alleged in the
superceding indictment. Counsel further testified that providing alibi evidence to the
prosecutor was Ketchum's idea because, by then, Ketchum had already admitted to
Boswell, his jail inmate and a testifying witness, that Ketchum had committed the
offense. Further, by the time trial counsel and Ketchum met with the prosecutor, the
prosecutor had the alibi evidence with respect to Ketchum's whereabouts on the date
alleged in the original indictment. While meeting with the prosecutor, Ketchum
essentially focused on discrediting Boswell. Finally, trial counsel testified that
Ketchum's discussion of the case with Boswell was against the advice of counsel. 

 At the conclusion of the testimony, the trial court denied the motion for new
trial. 

C. The Trial Record

1. Improper Opening Statement and Jury Argument

 In his appellate brief, Ketchum asserts that his trial counsel failed to object to
the prosecutor's improper opening statement wherein the prosecutor mentioned
Mickey Boswell. A review of the record reveals the following statements made by the
prosecutor:

 [Inmate Mickey Boswell] wants to come forward because he does not
want this man to get away with raping an eight-just turned nine year old
little girl. He is going to tell you what this defendant told him about the
rape of the victim, how this defendant called the little girl [expletives
omitted]. Then he said he could have [graphic description omitted], that
he did touch her and do things to her but that he thought he was going
to get away with it. But Mr. Boswell will come in and tell you exactly
what [Ketchum] said because he wants to do the right thing here and he
wants to help this little girl so that she is not having to testify all by
herself what [Ketchum] did to her. 


Before the foregoing statement, the prosecutor stated that Boswell was "coming
forward on his own volition. . . . He also is a sex offender. He has been to prison for
raping a girl, consensual, when she was 15 years old." 

 Ketchum maintains that the prejudice resulting from his trial counsels' failure to
object to the opening statement was augmented by the prosecutor's jury argument
regarding Boswell's credibility. Ketchum characterizes the prosecutor's jury argument
as a personal opinion that Boswell was a more trustworthy child molester because
Boswell's victim was older than Ketchum's victim. Ketchum concedes that trial
counsel objected to the prosecutor's closing argument and the objection was
overruled. 

2. Improper Opinion Testimony as to C.M.'s Credibility

 Ketchum maintains that his trial counsel did not object when the school
counselor testified and made an improper comment as to the victim's credibility. The
school counselor was an outcry witness. Ketchum complains of the following
response during direct examination:

 [Prosecutor]: Did you feel like she was acting telling you this?

 [Counselor]: No. I felt she was very genuine. Her effect, the trembling,
the crying, it was very, very difficult for her.


We turn to the application of the law to the facts in the record.

D. Application

 There is no requirement that we approach the two-pronged inquiry of Strickland
in any particular order, or even address both components of the inquiry if the
defendant makes an insufficient showing on one component. Strickland, 466 U.S. at
697. Thus, we turn to the record evidence to determine whether Ketchum has met
his burden to prove ineffective assistance of counsel. See id. 

 Initially, we note that the record in this case does not support a finding that
Ketchum's trial lawyers disclosed his alibi evidence. Rather, the disclosure was
Ketchum's idea to counter Ketchum's confession to Boswell. Further, the prosecutor
already had the alibi evidence and Boswell's statement at the time the parties met. Similarly, the record does not support a finding that Ketchum apprised trial
counsel that Ketchum's mother was available and that Ketchum would benefit from
her testimony. See Holland v. State, 761 S.W.2d 307, 319 (Tex. Crim. App. 1988)
("Absent a showing by appellant that he would have benefitted from the testimony,
the decision not to call witnesses at either stage of trial does not raise the spectre of
ineffective assistance."). Further, the proffered evidence that the victim did not spend
the night at Ketchum's residence was cumulative of comparable testimony already
before the jury. See id. 

 Ketchum bases his two remaining complaints on trial counsels' failure to object
to the prosecutor's opening statement and an outcry witness's opinion testimony. 
Ketchum asserts that the prosecutor's opening statement improperly injected personal
opinion regarding Boswell's credibility. He concedes that, even if improper statements
were made, he must show reversible error. The State responds that the prosecutor
did not say she believed Boswell to be credible. The record does not show that the
prosecutor espoused a personal opinion during opening statement. Rather, the
prosecutor related the State's facts which she expected to prove in support of the
charges against Ketchum. See Tex. Code Crim. Proc. Ann. art. 36.01(a)(3) (Vernon
Supp. 2005). 

 The purpose of article 36.01 is to communicate to the jury the party's theory
of the case in order to aid the jury to evaluate the evidence as it is being presented. 
Parra v. State, 935 S.W.2d 862, 871 (Tex. App.-Texarkana 1996, pet. ref'd). The
opening statement in a criminal case is an outline of facts which the prosecution in
good faith expects to prove. Id. In this case, the prosecutor presented evidence at
trial that supported what she said in opening statement. (8) 

 Ketchum maintains that trial counsel should have objected because the school
counselor (an outcry witness) improperly gave her opinion of the victim's credibility. 
Based on our holding in State v. Cabrera, 24 S.W.3d 528, 531 n.2 (Tex. App.-Corpus
Christi 2000, pet. ref'd), the State concedes error because evidence as to the child
victim's truthfulness is inadmissible. However, the State counters that trial counsel
effectively exploited the opinion through cross-examination in furtherance of
Ketchum's defensive theory. At trial, the counselor conceded that the victim's
demeanor at the time she outcried could have been based on other factors. When
asked, for example, if the victim could have cried because someone else was the
perpetrator who she did not wish to identify, the counselor answered, "Yes."


E. Disposition

 We determine counsels' performance by the totality of the representation. See
McFarland, 845 S.W.2d at 843. We observe that Ketchum had the opportunity to
develop the record with respect to trial counsels' strategy because one of his attorneys
testified at the post-trial hearing. However, in his motion for a new trial and at the
hearing on the motion, Ketchum did not complain that trial counsel had failed to object
to the prosecutor's opening statement and to the counselor's opinion testimony. We
conclude that the record does not support his argument. Appellate review of trial
counsels' representation is highly deferential and presumes that counsel's actions fell
within the wide range of reasonable and professional assistance. See Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Thus, we need not speculate about the
soundness of the many possible trial strategies counsel may have used. See Jackson,
877 S.W.2d at 771(holding that an appellate court cannot conclude based on
speculation that counsel was ineffective when the record does not show counsel's
reasons for the decisions made at trial); Delrio v. State, 840 S.W.2d 443, 447 (Tex.
Crim. App. 1992) (en banc) (per curiam). Because the record does not establish
counsel's reasons for failing to object, we cannot conclude counsel exercised other
than reasonable professional judgment. Bone, 77 S.W.3d at 833; Jackson, 877
S.W.2d at 771. Accordingly, we conclude that Ketchum has not met the first prong
of the Strickland test as to trial counsels' failure to object. See Strickland, 466 U.S.
at 688; Robertson, 187 S.W.3d at 483-84.

 With respect to Ketchum's remaining complaints that (1) his alibi defense was
improperly disclosed, and (2) his mother was not called to testify, we have already
concluded that the record does not demonstrate trial counsel disclosed the alibi
defense or knew that Ketchum's mother was available to testify. Thus, Ketchum
marshalled no evidence to support his complaint. See Phetvongkham v. State, 841
S.W.2d 928, 932 (Tex. App.-Corpus Christi 1992, pet. ref'd) (citing Johnson v.
State, 691 S.W.2d 619, 626 (Tex. Crim. App. 1984) (overruling appellant's
contention that counsel was ineffective because no evidence supported this
contention). Even assuming error, we cannot conclude that, but for the complained
of errors, the result of the trial would have been different. Accordingly, we conclude
that Ketchum has not met the second Strickland prong. See Strickland, 466 U.S. at
688; Jackson, 877 S.W.2d at 771.

 We overrule Ketchum's fourth point of error.

VII. MISTRIAL

 By his fifth point of error, Ketchum asserts the trial court reversibly erred by
denying his motion for mistrial based on the prosecutor's injecting her personal opinion
suggesting Ketchum's guilt during cross-examination of Ketchum's wife. The
testimony at issue occurred in the context of cross-examination. The prosecutor
cross-examined Ketchum's wife as follows:

 Q. You are saying that the victim and her brother never stayed at your
trailer?


 A. Not at night . . . they were at my house during the day, all the time.

 Q. But they never slept over for-they never slept over at your house?

 A. No, ma'am.

 Q. They were awakened at 2 a.m.?

 A. No, ma'am.

* * *

 Q. And [Ketchum], he did like to fish, didn't he?

 A. My husband, that is his great desire to fish.

 Q. He would fish at the [pier]?

 A. No. He had different spots. He had favorite spots that he went by
himself that children would have gotten hurt.


 Q. I would have to agree that with him children would get hurt. 


Trial counsel objected and requested an instruction to disregard. The trial court
sustained the objection stating, "That is out of line." The colloquy ensued:

 [Ketchum's counsel]: Judge, motion to disregard that and I move for a
mistrial right now, Judge.


 The Court: Prosecutor's last comments and what was your motion?


 [Ketchum's counsel]: Instruction to disregard and move for a mistrial.


 [The Court]: Motion for mistrial is denied. . . . I have already instructed
the jury to disregard that. 


Ketchum maintains that the prosecutor's statement was a deliberate sidebar meant to
inflame the minds of the jurors. The State concedes the comment was improper but
counters that the instruction to disregard cured or rendered the error harmless. 


A. Standard of Review 

 We review a trial court's decision to deny a mistrial under an abuse of discretion
standard. Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); see Russeau
v. State, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005). We must uphold the trial
court's ruling if that ruling was within the zone of reasonable disagreement. Wead,
129 S.W.3d at 129; Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991) (en banc) (op. on reh'g). "Only in extreme circumstances, where the prejudice
is incurable, will a mistrial be required." Hawkins v. State, 135 S.W.3d 72, 77 (Tex.
Crim. App. 2004) (en banc). 

 In reviewing the trial court's decision, we review the facts in the light most
favorable to the trial court's ruling. Ex parte Peterson, 117 S.W.3d 804, 819 (Tex.
Crim. App. 2003) (per curiam). We "afford almost total deference to a trial court's
determination of the historical facts that the record supports, especially when the trial
court's fact findings are based on an evaluation of credibility and demeanor." Id. 
(citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Generally,
whether the error was such that it could not have been cured by an instruction and
whether the prosecutor acted in reckless disregard of such error are "essentially factual
questions." State v. Lee, 15 S.W.3d 921, 926 (Tex. Crim. App. 2000) (citing Bauder
v. State, 921 S.W.2d 696, 700 (Tex. Crim. App. 1996)). However, if the answers
to these questions turn on the state of the law, we need not give deference to the trial
court's ruling. Id. (citing Guzman, 955 S.W.2d at 87-89).

B. Applicable Law

 A mistrial is an extreme remedy for prejudicial events occurring during the trial
process. See Hawkins, 135 S.W.3d at 77. Only when it is apparent that an
objectionable event at trial is so emotionally inflammatory that curative instructions are
not likely to prevent the jury from being unfairly prejudiced against the defendant may
a motion for mistrial be granted. Id. at 79. 

 The request for an instruction that the jury disregard an objectionable occurrence
is essential only when the such an instruction could have had the desired effect, which
is to enable the continuation of the trial by a impartial jury. Young, 137 S.W.3d at 70. 
The party who fails to request an instruction to disregard will have forfeited appellate
review of that class of events that could have been "cured" by such an instruction. 
See Id. But if an instruction could not have had such an effect, the only suitable
remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to
presenting the complaint on appeal. Id. Faced with incurable harm, a defendant is
entitled to a mistrial, and if denied one, will prevail on appeal. Id. 

C. Application

 By objecting and requesting an objection to disregard, Ketchum preserved error. 
See Tex. R. App. P. 33.1(a)(1)(A); Young, 137 S.W.3d at 70. The trial court properly
sustained the objection to the statement. See Ex parte Peterson, 117 S.W.3d at 816-17 n.55 ("Prosecutorial misconduct reasonably reaches only that conduct which is
qualitatively more serious than simple error and connotes an intentional flouting of
known rules or laws."). 

 The prosecutor improperly commented that she agreed with Ketchum's wife
that "with him children would get hurt." Ketchum's wife did not make the statement
and so the prosecutor had no statement with which to agree. Even so, the
prosecutor's comment was not so inflammatory that any prejudicial effect could not
be cured by the trial court's instruction to disregard. (9) See Young, 137 S.W.3d at 70. 
Because the instruction to disregard cured the error, we conclude that the trial court
did not abuse its discretion in denying the motion for mistrial. 

 Even assuming error, we conclude that the record does not demonstrate harm.
"Any other error, defect, irregularity, or variance" other than constitutional error, "that
does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). After
reviewing the nature and extent of the evidence against Ketchum, including the trial
court's instruction to disregard, we conclude that the instruction cured any prejudice
flowing from the prosecutor's improper statement. 

 We overrule Ketchum's fifth point of error.

VIII. CONCLUSION

 Having overruled Ketchum's five points of error, we affirm the judgment. ERRLINDA CASTILLO

 Justice

Publish.

Tex. R. App. P. 47.2(b).


Opinion delivered and filed

this 10th day of August, 2006. 
1. Ketchum was originally charged with two counts of aggravated sexual assault of a child alleged
to have occurred on or about June 25, 2004. On May 26, 2005, a superceding indictment was filed
that contained the same two counts but added an enhancement paragraph alleging a 1987 felony sexual
assault conviction. On August 18, 2005, a second superceding indictment changed the year of the
offense from 2004 to 2003
. In Count One of the latter superceding indictment, the instrument alleged
that Ketchum intentionally or knowingly committed unlawful sexual contact with the victim C.M., a child
under fourteen years of age and not his spouse. See Tex. Pen. Code. Ann. § 22.011(c)(1) (Vernon
2005). In Count Two, the same superceding indictment alleged that Ketchum committed aggravated
sexual assault by digital penetration of the child's sexual organ. See Tex. Pen. Code. Ann. §
22.021(a)(1)(B)(iii) (Vernon 2005). 
2. A clearly wrong and unjust verdict occurs where the jury's finding is "manifestly unjust,"
"shocks the conscience," or clearly demonstrates bias." Prible v. State, 175 S.W.3d 724, 731 (Tex.
Crim. App. 2005).
3. The original indictment alleged the incident occurred in 2004. The superceding indictment,
upon which the State proceeded to trial, changed the year to 2003. See note 1.
4. See Tex. Pen. Code Ann. § 46.02 (Vernon 2003); Christian v. State, 686 S.W.2d 930, 933-34
& n.9 (Tex. Crim. App. 1985) (en banc). 
5. An objection, request for an instruction to the jury, and motion for mistrial all seek judicial
remedies of decreasing desirability for events of decreasing frequency. See Young v. State, 137 S.W.3d
65, 69 (Tex. Crim. App. 2004) (en banc). The traditional and preferred procedure for a party to voice
its complaint has been to seek them in sequence-that is, (1) to object when it is possible, (2) to request
an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party
thinks an instruction to disregard was not sufficient. Id. However, this entire sequence is not essential
to preserve complaints for appellate review. Id. The essential requirement is a timely, specific request
that the trial court refuses. Id. 
6. We note that a proper jury charge instruction lessens any prejudice caused by the admission
of extraneous offense evidence. Robinson v. State, 701 S.W.2d 895, 899 (Tex. Crim. App. 1985) (en
banc). In this case, the charge contained a limiting instruction. Ketchum did not object to the charge. 

7. The Texas Court of Criminal Appeals has stated:


 Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness
of counsel's challenged conduct on the facts of the particular case, viewed as of the
time of counsel's conduct. A convicted defendant making a claim of ineffective
assistance must identify the acts or omissions of counsel that are alleged not to have
been the result of reasonable professional judgment. The court must then determine
whether, in light of all the circumstances, the identified acts or omissions were outside
the wide range of professionally competent assistance. In making that determination,
the court should keep in mind that counsel's function, as elaborated in prevailing
professional norms, is to make the adversarial testing process work in the particular
case. At the same time, the court should recognize that counsel is strongly presumed
to have rendered adequate assistance and made all significant decisions in the exercise
of reasonable professional judgment.


Robertson v. State, 187 S.W.3d 475, 482-83 (Tex. Crim. App. 2006).

8. In State v. Lee, 15 S.W.3d 921, 925 n.3 (Tex. Crim. App. 2000), the Texas Court of Criminal
Appeals assumed, but did not decide for purposes of its analysis, that a comment made by the
prosecutor in opening statement amounted to substantive evidence. The Court noted that in Griffin v.
California, 380 U.S. 609, 613 (1965), the Supreme Court considered the prosecutor's comments in
closing arguments, and the trial court's acquiescence in such comments, to amount to evidence: "No
formal offer of proof is made as in other situations; but the prosecutor's comment and the court's
acquiescence are the equivalent of an offer of evidence and its acceptance." Because it is not necessary
to our decision, we need not assume that the prosecutor's statement amounted to substantive evidence.
9. We observe that the trial court stated it had already instructed the jury to disregard. Implicit
in the trial court's statement is the instruction to the jury to disregard. See Tex. R. App. P. 33.1(a)(2)(A).